IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AGROCOOPERATIVE LTD.,               §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §        CIVIL ACTION NO. H-14-1707
                                    §
SONANGOL SHIPPING ANGOLA            §
(LUANDA) LIMITADA and               §
SONANGOL E.P.,                      §
                                    §
        Defendants.                 §

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] are Garnishees Sonangol International Procurement Inc. ("SIPI"), Sonangol Offshore Services Company ("SOSC"), Sonangol Gas Natural Company ("SGNC"), Sonangol Hidrocarbonetos USA Ltd. ("SHUSAL"), Sonangol Marine Services Inc. ("SMSI"), Sonangol U.S.A. Company ("SUSAC"), and Stena Sonangol's ("SS") (collectively "Garnishees") Motion to Vacate Order Directing Issuance of Maritime Attachment and Garnishment and Writs Issued Pursuant Thereto and Motion for Award of Attorneys' Fees and Costs (Doc. 30); Defendant Sociedade Nacional de Combustiveis de Angola, Empresa Publica's ("EP") Motion to Dismiss for Lack of Personal Jurisdiction, Forum Non Conveniens, and Insufficient Process (Doc. 36); and Plaintiff's Motion to Compel Garnishees' Responses to Plaintiff's Interrogatories (Doc. 39).

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 38.

The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Garnishees' motion be **DENIED** and that Defendant EP's motion be **DENIED**.  Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

## I.  Case Background

Plaintiff filed this action pursuant to the Federal Arbitration Act ("FAA")[2] and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rules") to attach and garnish Defendants' tangible and intangible property in the hands of Garnishees in anticipation of a potential arbitration award against Defendant Sonangol Shipping Angola (Luanda) Limitada ("SSALL").

## A.  Factual Background

Plaintiff is an Liberian company that owns the vessel M/T KERALA.[3]  Defendant SSALL, an entity with its primary place of business in Luanda, Angola, entered into a time charter party with Plaintiff in September 2009 (the "2009 Time Charter").[4]

Pursuant to the 2009 Time Charter, Defendant SSALL agreed to

---

[2]    9 U.S.C. §§ 1-16.

[3]    Doc. 12, Pl.'s Am. Verified Compl. p. 2.

[4]    Id. pp. 2, 3.

charter the M/T KERALA.[5]  The initial charter period was from
September 9, 2009, through December 15, 2009.[6]  The 2009 Time
Charter included an option to extend the charter through March 15,
2010.[7]  The parties agreed, not only to the optional initial
extension, but to four more extensions, the final of which was to
conclude on December 15, 2011.[8]  Before reaching the end of the
final extension, Plaintiff and Defendant SSALL entered into a new
time charter party on October 21, 2011 (the "2011 Time Charter").[9]

     The 2011 Time Charter began on November 16, 2011, and extended
for twelve months.[10]  As was its predecessor, the 2011 Time Charter
was extended multiple times by agreement of the parties.[11]  The last
of these extensions was to conclude on February 15, 2014.[12]  Before
the end of the final extension, the M/T KERALA was hijacked by
heavily armed pirates when it was anchored a few miles from the
coast of Angola.[13]

---

[5]     Id. p. 3.

[6]     Id.

[7]     Id.

[8]     Id.

[9]     Id.

[10]    Id.

[11]    Id.

[12]    Id.

[13]    Id.; Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to
Garnishees' Mot. to Vacate, Arbitration Claim Submissions p. 3.

3

The pirates took control of the M/T KERALA, disabled the communications systems, and sailed to Nigeria.[14]  While under the control of the pirates, the M/T KERALA rendezvoused on separate occasions with three unknown vessels to offload cargo, which was shipped and/or owned by Defendant EP.[15]  In total, the pirates stole approximately eighteen percent of the M/T KERALA's cargo.[16]  After the pirates released the vessel and disembarked, communications were reestablished, and the M/T KERALA proceeded to the port of Tema, Ghana.[17]

The Angolan Navy then seized the M/T KERALA and forcibly took it back to the port of Luanda, Angola, where the remaining cargo was offloaded.[18]  The M/T KERALA was held at Luanda under armed force and was not allowed to depart for more than six months.[19]

The end result, as it relates to the 2011 Time Charter, was that Defendant SSALL failed to redeliver the M/T KERALA to

---

[14]    Doc. 12, Pl.'s Am. Verified Compl. p. 3; Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to Garnishees' Mot. to Vacate, Arbitration Claim Submissions p. 4.

[15]    Doc. 12, Pl.'s Am. Verified Compl. p. 3; Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to Garnishees' Mot. to Vacate, Arbitration Claim Submissions p. 4.

[16]    See Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to Garnishees' Mot. to Vacate, Arbitration Claim Submissions p. 5.

[17]    Id.; Doc. 12, Pl.'s Am. Verified Compl. p. 4.

[18]    Doc. 12, Pl.'s Am. Verified Compl. p. 4 (asserting, on information and belief, that the Angolan Navy acted at the direction of Defendant EP).

[19]    Id. (asserting, on information and belief, that the M/T KERALA was held at the direction of Defendant EP).

4

Plaintiff on February 15, 2014.[20]  Additionally, Defendant SSALL had
not made a payment since October 31, 2013, when it paid for the
charter hire period of October 13, 2013, to November 12, 2013.[21]
Defendant SSALL made no further charter hire payments but
ultimately redelivered the M/T KERALA to Plaintiff on August 7,
2014.[22]

**B.   Procedural Background**

On May 16, 2014, Plaintiff gave Defendant SSALL notice of the
commencement of London arbitration proceedings pursuant to the
terms of the 2011 Time Charter.[23]  Plaintiff accused Defendant SSALL
breaching the 2011 Time Charter by failing to pay hire that was due
and by breaching the 2011 Time Charter through the failure to
exercise due diligence to ensure the safety of the M/T KERALA.[24]
Defendant EP is not named as a party in the arbitration
proceedings.[25]

On June 18, 2014, Plaintiff filed a verified original
complaint against Defendant SSALL to obtain security in the event

---

[20]   Id.

[21]   Id.

[22]   Id.

[23]   See Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to
Garnishees' Mot. to Vacate, Letter from Holman Fenwick Willan LLP to Defendant
SSALL Dated May 16, 2014.

[24]   See Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to
Garnishees' Mot. to Vacate, Arbitration Claim Submissions p. 8.

[25]   See Doc. 42-1, Ex. A to Garnishees' Resp. to Pl.'s Surreply to
Garnishees' Mot. to Vacate, Arbitration Claim Submissions p. 1.

of a favorable arbitration outcome.[26]   Plaintiff alleged breach of
the 2011 Time Charter and sought "an [o]rder directing the Clerk of
Court to issue Process of Maritime Attachment and Garnishment
pursuant to Supplemental Rule B, attaching all tangible or
intangible property or any funds held by any of the Garnishees on
behalf of, for the benefit of, and/or for the account of [Defendant
SSALL]."[27]   At the time, Plaintiff sought to attach up to
$10,523,000 in property.[28]   The amount reflected the total of the
unremitted charter hire payments, costs and expenses under the time
charter, and contractual interest.[29]

On the same date, Plaintiff filed a motion for the issuance of
process of maritime attachment and garnishment and a motion for
appointment for service of process of maritime garnishment.[30]   Two
days later, the court granted both motions and entered an order
directing the Clerk of Courts to issue process of maritime
attachment and garnishment.[31]   The Clerk of Courts issued the ex
parte writs of attachment and garnishment to Garnishees SIPI and

---

[26]   See Doc. 1, Pl.'s Verified Original Compl. p. 2.

[27]   Id. p. 4.

[28]   See id.

[29]   Id. pp. 4-5.

[30]   See Doc. 2, Mot. for Order for Issuance of Process of Mar. Attach.
& Garnishment; Doc. 3, Mot. for Appointment for Serv. of Process of Mar.
Garnishment.

[31]   See Doc. 5, Order Directing Clerk to Issue Process of Mar. Attach.
& Garnishment Dated June 20, 2014; Doc. 6, Order for Appointment for Serv. of
Writs of Mar. Garnishment.

SOSC with regard to the property of Defendant SSALL, as requested by Plaintiff.[32]   The writs "empower[ed], strictly charge[d] and command[ed]" the U.S. Marshal to instruct Garnishees "to maintain custody and possession of the tangible personal property . . . which belong[ed] to, [was] the property of, [was] held in a fiduciary capacity for, or [was] otherwise claimed by Defendant[s]."[33]

At the same time, Plaintiff filed actions in the Northern and Western Districts of Texas seeking attachment and garnishment of Defendant SSALL's property in the hands of Garnishees SGNC, SHUSAL, SMSI, SUSAC, and SS.[34]   Garnishees all filed answers.[35]   Both of those cases have been dismissed.[36]

---

[32]   See Doc. 5-1, Attach. 1 to Order Directing Clerk to Issue Process of Mar. Attach. & Garnishment Dated June 20, 2014, Process of Mar. Attach. & Garnishment to Garnishee SIPI; Doc. 5-2, Attach. 2 to Order Directing Clerk to Issue Process of Mar. Attach. & Garnishment Dated June 20, 2014, Process of Mar. Attach. & Garnishment to Garnishee SOSC.

[33]   Doc. 5-1, Attach. 1 to Order Directing Clerk to Issue Process of Mar. Attach. & Garnishment Dated June 20, 2014, Process of Mar. Attach. & Garnishment to Garnishee SIPI p. 2; Doc. 5-2, Attach. 2 to Order Directing Clerk to Issue Process of Mar. Attach. & Garnishment Dated June 20, 2014, Process of Mar. Attach. & Garnishment to Garnishee SOSC p. 2.

[34]   See Doc. 30, Mot. to Vacate Order Directing Issuance of Mar. Attach. & Garnishment p. 5; Agrocooperative Ltd. v. SSALL, Civil Action No. 3:14-cv-02254-B (N.D. Tex. June 20, 2014); Agrocooperative Ltd. v. SSALL, Civil Action No. 1:14-cv-0575-SS (W.D. Tex. June 20, 2014).

[35]   See Doc. 30, Mot. to Vacate Order Directing Issuance of Mar. Attach. & Garnishment p. 5; Agrocooperative Ltd. v. SSALL, Civil Action No. 3:14-cv-02254-B (N.D. Tex. June 20, 2014), Docs. 20, 22, & 24, Answers; Agrocooperative Ltd. v. SSALL, Civil Action No. 1:14-cv-0575-SS (W.D. Tex. June 20, 2014), Docs. 18 & 21, Answers.

[36]   See Agrocooperative Ltd. v. SSALL, Civil Action No. 3:14-cv-02254-B (N.D. Tex. June 20, 2014), Doc. 31, Order Granting Jt. Mot. to Dismiss Dated Oct. 28, 2014; Agrocooperative Ltd. v. SSALL, Civil Action No. 1:14-cv-0575-SS (W.D. Tex. June 20, 2014), Doc. 23, Order Granting Jt. Mot. to Dismiss Dated September

On August 8, 2014, Plaintiff amended its pleading.[37] Plaintiff added EP as a defendant, claiming that it was an alter ego of Defendant SSALL.[38] In support of its alter ego claim, Plaintiff asserted, on information and belief, that:

(1) Defendant EP was Defendant SSALL's parent corporation;

(2) Defendant SSALL was "nothing more than a shell corporation" operating as a front for Defendant EP; (3) Defendant EP "exercise[d] complete control and dominance over [Defendant SSALL] . . . at all material times [and] controlled, dominated, and operated [Defendant SSALL] for [its own] benefit;"

(4) Defendant SSALL "was a mere shell, instrumentality, and conduit through which [Defendant] EP carried on business at all material times;"

(5) Defendant SSALL was "so inadequately capitalized that, compared with the business to be done . . . and the risks of loss attendant therego [sic], its capitalization — if any — was illusory or trifling;"

(6) "there exist[ed] such a unity of interest between [Defendants] that any individuality or separateness ha[d] ceased."[39]

In the amended complaint, Plaintiff named SGNC, SHUSAL, SMSI, SUSAC, and SS as additional garnishees.[40] On August 8, 2014, Plaintiff also filed a an application for issuance of supplemental process of maritime attachment and garnishment seeking to attach up

---

24, 2014.

[37]   See Doc. 12, Pl.'s Am. Verified Compl. with Req. for Writ of Mar. Attach. & Garnishment.

[38]   See id. pp. 2, 5.

[39]   Id. pp. 5-6.

[40]   See id. p. 1.

to $11,373,000 in property.[41]  Plaintiff did not seek an additional court order to address the changes in its verified complaint.[42] Four days later, the Clerk of Courts issued the ex parte writs of attachment and garnishment to all seven of the named garnishees with regard to the property of Defendants SSALL and EP.[43]

Garnishee SS filed an answer on August 25, 2014.[44]  Therein, Garnishee SS stated that it "d[id] not have possession, custody, or control of any tangible or intangible property" of Defendant SSALL or Defendant EP, that it "d[id] not owe any debts to Defendants," that it "d[id] not have possession, custody, or control of any property located anywhere that [was] held as fiduciary in which the Defendants ha[d] an interest," that it "d[id] not have possession, custody, or control of any debts, credits, or effects of the Defendants in this District or anywhere else," and that it "d[id] not expect to obtain possession of any such tangible or intangible property of the Defendants in the foreseeable future."[45]  William

---

[41]     See Doc. 14, Appl. for Issuance of Supplemental Process of Mar. Attach. & Garnishment; see, e.g., Doc. 14-1, Proposed Process of Mar. Attach. & Garnishment to Garnishee SGNC.

[42]     See Doc. 14, Appl. for Issuance of Supplemental Process of Mar. Attach. & Garnishment.

[43]     See Doc. 15, Process of Mar. Attach. & Garnishment to Garnishee SGNC; Doc. 15-1, Process of Mar. Attach. & Garnishment to Garnishee SHUSA; Doc. 15-2, Process of Mar. Attach. & Garnishment to Garnishee SIPI; Doc. 15-3, Process of Mar. Attach. & Garnishment to Garnishee SMSI; Doc. 15-4, Process of Mar. Attach. & Garnishment to Garnishee SOSC; Doc. 15-5, Process of Mar. Attach. & Garnishment to Garnishee SUSAC; Doc. 15-6, Process of Mar. Attach. & Garnishment to Garnishee SS.

[44]     See Doc. 16, Garnishee SS's Answer.

[45]     Id. pp. 1-2.

L. Warnement Jr., corporate secretary of Garnishee SS, signed a verification in support of the answer that affirmed, under penalty of perjury, the truth and correctness of the facts stated in the answer.[46]

On September 9, 2014, Garnishees SIPI, SOSC, SGNC, SHUSAL, SMSI, and SUSAC each filed an answer.[47] All six answers stated that the answering party:

> d[id] not have possession, custody or control of any property or assets of [SSALL] or [EP] . . . including, but not limited to, any cash, funds, credits, wire transfers, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub charter hire, or any other tangible or intangible property or assets belonging to, due, claimed by, being held for or on behalf of, or being transferred for the benefit of [Defendant SSALL or EP], nor [did the answering party] anticipate the receipt of any such property or assets.[48]

Each answer was supported by the sworn verification of an officer, director, or attorney of the answering party.[49] In addition to the

---

[46]     Doc. 16, Attach. 1 to Garnishee SS's Answer, Verification.

[47]     See Docs. 24-29, Garnishees SIPI, SOSC, SGNC, SHUSAL, SMSI, and SUSAC's Answers.

[48]     See Doc. 24, Garnishee SMSI's Answer p. 2; Doc. 25, Garnishee SGNC's Answer p. 2; Doc. 26, Garnishee SHUSA's Answer p. 2; Doc. 27, Garnishee SUSAC's Answer, p. 2; Doc. 28, Garnishee SIPI's Answer p. 2; Doc. 29, Garnishee SOSC's Answer p. 2.

[49]     See Doc. 24-1, Attach. 1 to Garnishee SMSI's Answer, Aff. of SMSI's President; Doc. 25-1, Attach. 1 to Garnishee SGNC's Answer, Aff. of SGNC's Counsel; Doc. 26-1, Attach. 1 to Garnishee SHUSA's Answer, Aff. of SHUSA's Gen. Manager & President; Doc. 27-1, Attach. 1 to Garnishee SUSA's Answer, Aff. of SUSA's President; Doc. 28-1, Attach. 1 to Garnishee SIPI's Answer, Aff. of SIPI's Former Assistant Sec'y; Doc. 29-1, Attach. 1 to Garnishee SOSC's Answer, Aff. of SOSC's Vice President. The court acknowledges that SGNC's counsel, SIPI's former assistant secretary, and SOSC's vice president are the same person. See Doc. 25-1, Attach. 1 to Garnishee SGNC's Answer, Aff. of SGNC's Counsel; Doc. 28-1, Attach. 1 to Garnishee SIPI's Answer, Aff. of SIPI's Former Assistant Sec'y; Doc. 29-1, Attach. 1 to Garnishee SOSC's Answer, Aff. of SOSC's Vice President.

denial of possession of any property of Defendants, Garnishee SIPI stated that it was no longer an existing company, having merged into SOSC.[50]

Garnishees responded to the interrogatories that Plaintiff served with the writs of attachment.[51]  With regard to the property of Defendant SSALL, Garnishees stated that they had not had "any payments, transfers, and/or credits to or from" Defendant SSALL in the past three years.[52]  Garnishees objected to the question concerning the property of Defendant EP without affirming or denying that they had Defendant EP's property in their possession.[53] Garnishees objected to but did not answer the remaining questions about their corporate structures and relationships with Defendant EP.[54]

On September 9, 2014, all seven Garnishees jointly filed the pending motion to vacate.[55]  On October 20, 2014, Defendant EP filed the pending motion to dismiss.[56]  On October 23, 2014, Plaintiff

---

[50]    See Doc. 28, Garnishee SIPI's Answer p. 2.

[51]    See, e.g., Doc. 35-1, Ex. A to Garnishees' Reply to Pl.'s Resp. to Garnishees' Mot. to Vacate & Mot. for Award of Attorneys' Fees & Costs, Garnishee SMSI's Objections & Answers to Plaintiff's Interrogs.

[52]    See, e.g., id. p. 10.

[53]    See, e.g., id. p. 4.

[54]    See, e.g., id. pp. 2-10.

[55]    See Doc. 30, Mot. to Vacate Order Directing Issuance of Mar. Attach. & Garnishment.

[56]    See Doc. 36, Mot. to Dismiss.

filed the pending motion to compel.  All of the pending motions are fully briefed.

## II.  Supplemental Rule B Standard

Supplemental Rule B "fashion[s] procedures by which a valid maritime claim may form the basis for a writ of maritime attachment." Alphamate Commodity GMBH v. CHS Europe SA, 627 F.3d 183, 186 (5th Cir. 2010)(quoting Sonito Shipping Co. Ltd. v. Sun United Mar. Ltd., 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007)).  Under Supplemental Rule B, a district court "take[s] jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V., 249 F.3d 413, 421 (5th Cir. 2001)(citing Great Prize, S.A. v. Mariner Shipping Pty. Ltd., 967 F.2d 157, 159 (5th Cir. 1992); see also Jensen v. Rollinger, No. SA:13-CV-1095-DAE, 2014 WL 4539660, at *1 (W.D. Tex. Sept. 11, 2014)(slip copy)(citing ProShipLine, Inc. v. M/V Beluga Revolution, Civil Action No. H-07-4170, 2008 WL 447707, at *2 (S.D. Tex. Feb. 19, 2008)(unpublished)).  The Fifth Circuit interprets the requirement of Supplemental Rule B that the defendant not be "found within the district" to have two components, both of which must be satisfied: the defendant is not subject to the jurisdiction of the district court and the defendant cannot be served within the district. Submersible Sys., Inc., 249 F.3d at 421.

Supplemental Rule B allows a plaintiff seek "process to attach

the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process" if the "defendant is not found within the district when a verified complaint praying for attachment" and its supporting affidavit are filed.  See also <u>Sembawang Shipyard, Ltd. v. Charger, Inc.</u>, 955 F.2d 983, 987 (5th Cir. 1992)(stating that the Supplemental Rules "allow a maritime plaintiff to secure [its] claim.")  When property is attached, "any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  Supplemental R. E(4)(f).

Many district court cases in the Fifth Circuit have adopted and/or applied the Second Circuit's test for the vacatur of an attachment.  <u>See, e.g.</u>, <u>Jensen</u>, 2014 WL 4539660, at *2 (citing <u>Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.</u>, 951 F. Supp. 2d 909, 915 (S.D. Tex. 2013)); <u>Icon Amazing, L.L.C.</u>, 951 F. Supp. 2d at 915 (citing <u>Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 (2[d] Cir. 2006), <u>abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58 (2[d] Cir. 2009)); <u>Oldendorff Carriers GMBH & Co. v. Grand China Shipping (Hong Kong) Co., Ltd.</u>, C.A. No. C-12-074, 2013 WL 1628358, at *3 (S.D. Tex. Mar. 28, 2013)(unpublished)(same); <u>SLS Shipbuilding Co. Ltd. v. Ionia Mgmt. S.A.</u>, Misc. Action No. H-11-

13

271, 2011 WL 2652365, at *1 (S.D. Tex. July 5, 2011)(unpublished)(citing Naftomar Shipping & Trading Co. v. KMA Int'l S.A., Civil Action No. V-11-2, 2011 WL 888951, at *2 (S.D. Tex. Mar. 10, 2011)(unpublished)(citing Aqua Stoli Shipping Ltd., 460 F.3d at 445); Naftomar Shipping & Trading Co., 2011 WL 888951, at *2; Austral Asia Pte Ltd. v. SE Shipping Lines Pte Ltd., Civil Action No. 12-1600, 2012 WL 2567149, at *1 (E.D. La. July 2, 2012)(unpublished)(citing Aqua Stoli Shipping Ltd., 460 F.3d at 445). In addition to meeting the filing and service requirements of Supplemental Rules B and E, the burden is on the plaintiff to show that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. 460 F.3d at 445 & n.5.

### III. Discussion

The court first makes note of the nature of this action to clarify what is at stake here. Plaintiff brought this action under Supplemental Rule B. The underlying claim upon which Plaintiff bases attachment of property owned by Defendants SSALL and EP is breach of the 2011 Time Charter, which is being litigated against Defendant SSALL in the London arbitration proceedings. Plaintiff did not allege any facts suggesting that Defendant EP, by its own conduct, breached the 2011 Time Charter; nor did plaintiff plead an

independent claim against Defendant EP.  Rather, Plaintiff sought attachment of Defendant EP's property to secure the potential arbitration award against Defendant SSALL on the theory that the two are alter egos.

**A.**  **Defendant EP's Motion to Dismiss**

Ignoring that the only basis for this action is Supplemental Rule B, Defendant EP: (1) challenges the court's exercise of personal jurisdiction based on the sufficiency of minimum contacts and the traditional notions of fair play and substantial justice; (2) argues for dismissal of the action against it on the grounds of forum non conveniens, seeking to enforce the forum-selection clause of the 2011 Time Charter as a nonsignatory; and (3) challenges the sufficiency of service of process.

Regarding personal jurisdiction, if Plaintiff can show that it has a valid prima facie admiralty claim against Defendant EP, that Defendant EP cannot be found within the district, that Defendant EP's property is within the district, and that no statutory or maritime law bars attachment, minimum contacts and the traditional notions do not matter.  That is because any attached property serves as the basis for personal jurisdiction over Defendant EP. See Submersible Sys., Inc., 249 F.3d at 421; Argo Dredging, L.L.C. v. 1990 IMS Model Dredge, No. 1:07CV536 LG-JMR, 2007 WL 2461972, at *1 (S.D. Miss. Aug. 27, 2007)(unpublished).  Defendant EP is not entitled to dismissal based on the lack of personal jurisdiction.

The doctrine of forum non conveniens is not relevant to this action. Plaintiff is proceeding on the merits of this dispute in the forum selected by the parties to the 2011 Time Charter. Supplemental Rule B allows Plaintiff to secure a potential favorable judgment through the attachment of property in this district, provided Plaintiff meets the rule's requirements. See Aqua Stoli Shipping Ltd., 460 F.3d at 436; Sembawang Shipyard, Ltd., 955 F.2d at 986.

Defendant EP's reliance on Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627 (9th Cir. 1982), regarding the enforcement of forum-selection clauses is off the mark. In Polar Shipping Ltd., the court recognized the enforceability of forum selection clauses that selected foreign fora and the general appropriateness of dismissing actions to be litigated where chosen by the parties to the contract. Id. at 631. However, the court concluded:

> We hold that in an admiralty action, absent express intent to the contrary, a forum selection clause providing that all disputes under the charter will be determined by a selected foreign court neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum.

Id. at 633. Defendant EP is not entitled to dismissal based on the doctrine of forum nonconveniens.

As for the sufficiency of service of process, Plaintiff "does

not believe that Defendant Sonangol E.P. has yet been served" as of November 10, 2014.    Defendant EP's argument on sufficiency of service is premature.

### B.  <u>Motion to Vacate</u>

Garnishees' joint motion to vacate presents two arguments in favor of vacatur: 1) Garnishees do not have possession, custody, or control of any property or assets of either defendant; and 2) Defendant EP's property would not be subject to attachment. Plaintiff argues in response that the court should not take Garnishees' answers at face value and should require that they answer the propounded interrogatories in full before determining the validity of attachment.[57]    Plaintiff also contends that Garnishees lack standing to challenge the writs of attachment because they do not claim an interest in any attached property.[58]

The court finds that the decision on standing resolves the motion to vacate and, thus, does not address Garnishees' arguments. The court agrees that Garnishees lack standing, not in a constitutional sense, but in the sense that Supplemental Rule

---

[57]    This issue is addressed in the subsequent section where the court discusses Plaintiff's motion to compel.

[58]    Plaintiff also points out that Garnishees failed to submit a certificate of conference with their motion to vacate.    Garnishees represent that, prior to the filing of the motion to vacate, their counsel communicated with Plaintiff's counsel about Garnishees' objections to this proceeding. Garnishees' counsel apologized to the court for not including a certificate of conference.    Although the local rules require that most motions contain an averment that the movant conferred with the other party and that the parties could not agree on the disposition of the motion, Garnishees' failure to comply with that requirement does not warrant any sanction in this instance.    Local Rule 7.1(D).

E(4)(f) provides a procedure for persons claiming interest in attached property to secure its release.  In this action, Plaintiff has not identified any specific property in the hands of or subject to the control of Garnishees that belongs to Defendants.  As a result, no property has been attached.  The writs of attachment do not identify specific property, referring generally to "any tangible or intangible personal property" belonging to Defendants that is in the hands of Garnishees.[59]  In their answers, Garnishees represented that they do not have possession, custody, or control of any property belonging to Defendants.  Thus, Garnishees can meet neither the attachment nor the interest elements of Rule E(4)(f).  Rule E(4)(f) is simply not applicable at this time.[60]

The writs of attachment and garnishment should not be vacated at this time.  If the court adopts the recommendation to deny the motion to vacate, Garnishees will not be entitled to an award of attorneys' fees and costs.

**C.  Motion to Compel**

Plaintiff asks the court to compel each Garnishee to answer four specific interrogatories fully and without objection.  Plaintiff seeks answers to the following interrogatories:

---

[59]   *See, e.g.,* Doc. 15, Process of Mar. Attach. & Garnishment to Garnishee SGNC.

[60]   Because Garnishees are not persons claiming interest in attached property, they are not entitled to a prompt hearing under Supplemental E(4)(f).

INTERROGATORY NO. 1.  Identify the corporate structure of [Garnishee], including, but not limited to, (a) its directors, officers, managers, and/or shareholders; (b) its hierarchical employee structure; and (c) its relationship to all parent companies, subsidiaries, and related corporations.

. . . .

INTERROGATORY NO. 3.  Identify each shareholder of [Garnishee], including the number and percentage of shares held by each.

. . . .

INTERROGATORY NO. 6.  Identify all payments, transfers, and/or credits made from [Garnishee] to Sonangol E.P. and/or from Sonangol E.P. to [Garnishee], and provide support therefor, including, but not limited to, tax returns and financial statements.

. . . .

INTERROGATORY NO. 9.  Identify all known parent, subsidiary, and/or related corporations of Sonang[]ol E.P. and for each such parent, subsidiary, and/or related corporation, identify its relationship to [Garnishee].[61]

Garnishees argue that Defendant EP is not a defendant in this proceeding,[62] that Defendant is not a party in the underlying arbitration, and that the propounded interrogatories go beyond discoverable information under Supplemental Rule B.

Supplemental Rule B(3)(a) states that a garnishee shall

---

[61]    Doc. 39, Pl.'s Mot. to Compel Garnishees' Resps. to Pl.'s Interrogs. pp. 9-12.

[62]    The court agrees that an amended order directing Clerk to issue process of maritime attachment and garnishment was not entered after Plaintiff amended its complaint to add Defendant E.P.  Given the low burden imposed on Plaintiff by Supplemental Rule B(1) for the entry of such an order, the court finds that an amended order should have been entered.  Plaintiff is **ORDERED** to submit a proposed amended order within fourteen days of the date of this Memorandum, Recommendation, and Order.

respond to interrogatories served with the complaint. "If the garnishee refuses or neglects to answer on oath as to the debts, credits, or effects of the defendant in the garnishee's hands, or any interrogatories concerning such debts, credits, and effects that may be propounded by the plaintiff, the court may award compulsory process against the garnishee."

Although the first sentence of the rule fails to set parameters for the scope of discoverable information, the second sentence clearly circumscribes the court's authority to issue compulsory process. The court only may compel answers to interrogatories that inquire about debts, credits, or effects of Defendant EP in Garnishees' hands.[63] Thus, to the extent that Interrogatory Number 6 asks for information about debts, credit, or effects of Defendant EP in Garnishees' hands, Garnishees must answer. An answer under oath is sufficient to satisfy Supplemental Rule B; Garnishees need not produce the requested documentary support. The other interrogatories to which Plaintiff seeks answers delve into matters beyond the court's compulsory powers.[64]

---

[63] To reach its decision, the court need not and, therefore, does not interpret the first sentence.

[64] The court is not moved by Plaintiff's argument that any Garnishee that is a subsidiary of Defendant EP is itself property of Defendant EP along with all of its assets, including office furniture and bank accounts. The cases cited by Plaintiff do not stand for that proposition. See Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V., Civil Action No. G-12-304, 2013 WL 126534, at *1 (S.D. Tex. Jan. 9, 2013)(S.D. Tex. Aug. 22, 2013)(unpublished)(addressing whether the defendant's interest in fuel bunkers, not a subsidiary company, was sufficient to sustain a Supplemental Rule B attachment); World Fuel Servs., Inc. v. SE Shipping Lines Pte., Ltd., Civil Action No. 10-4605, 2011 WL 446653, at *1 (E.D. La. Feb. 4,

If Garnishees answer Interrogatory Number 6 in the negative, that is, if their sworn response is that they do not have possession, custody, or control of any of Defendant EP's property, Plaintiff will need to evaluate whether it can meet its burden of showing, inter alia, that Defendant EP's property may be found within the district.[65]  If, on the other hand, Garnishees admit to having possession, custody, or control of Defendant EP's property, Plaintiff will need, at a minimum, to establish a prima facie case that Defendant EP is an alter ego of Defendant SSALL to be entitled to attachment of Defendant EP's property as security for a potential judgment against Defendant SSALL.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Garnishees' motion be **DENIED** and that Defendant EP's motion be **DENIED**. Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within

---

2011)(unpublished)(same).  Plaintiff cites no case that found that a subsidiary is attachable property under Supplemental Rule B.

[65]     The court calls Plaintiff's attention to each of Garnishees' denials, under oath, to possession, custody, or control of any property belonging to Defendant SSALL.  Therefore, the court asks Plaintiff also to consider whether it can meet its Supplemental Rule B burden as to the property of Defendant SSALL.

the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>15th</u> day of December, 2014.

_____
U.S. MAGISTRATE JUDGE